Citation Nr: 1714117 
Decision Date: 04/26/17 Archive Date: 05/05/17

DOCKET NO. 12-25 574 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri


THE ISSUES

Entitlement to a rating in excess of 10 percent for a lumbar spine disability, characterized as degenerative disc disease and degenerative joint disease, prior to August 24, 2015, and a rating in excess of 40 percent from that date.


REPRESENTATION

Veteran represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

A. Borman, Associate Counsel



INTRODUCTION

The Veteran served on active duty from October 1989 to November 1992. This matter comes before the Board of Veteran's Appeals (Board) on appeal of a March 2011 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Louis, Missouri. 

This appeal was remanded by the Board in April 2015 for further development and is now ready for disposition.

This appeal is comprised entirely of documents contained in the Virtual VA paperless claims processing system as well as the Veterans Benefits Management System (VBMS). Accordingly, any future documents should be incorporated in the Veteran's VBMS file. 


FINDINGS OF FACT

1. Prior to May 25, 2012, the Veteran's lumbar spine disability was characterized by forward flexion greater than 65 degrees, but not greater than 85 degrees; forward flexion of the thoracolumbar spine greater than 30 degrees but less than 60 degrees, or combined range of motion of the lumbar spine not greater than 120 degrees, or muscle spasm, guarding or localized tenderness resulting in abnormal gait or abnormal spinal contour, have not been shown.

2. From May 25, 2012 onwards, the Veteran's lumbar spine disability was characterized by forward flexion of the thoracolumbar spine to 30 degrees or less; unfavorable ankylosis of the entire spine and unfavorable ankylosis of the entire thoracolumbar spine, have not been shown. 

3. Prior to May 25, 2012, the neurological symptoms in the Veteran's lower extremities have been characterized by radiating pain in both legs that resulted in numbness of a mild nature; partial paralysis of a moderate nature has not been shown.

4. From May 25, 2012 onwards, the neurological symptoms in the Veteran's lower extremities have been characterized by intermittent pain, paresthesias and/or dysesthesias, and numbness of a moderate nature; partial paralysis of a moderately severe nature has not been shown.


CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 10 percent for a lumbar spine disability for the period prior to May 25, 2012, have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5237 (2016).

2. The criteria for a 40 percent rating, but no more, for a lumbar spine disability for the period from May 25, 2012 to August 24, 2015, have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.71a, DC 5237 (2016).

3. The criteria for a rating in excess of 40 percent for a lumbar spine disability for the period since August 24, 2015, have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.71a, DC 5237 (2016).

4. The criteria for a rating in excess of 10 percent for radiculopathy in each lower extremity prior to May 25, 2012, have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107(b) (West 2014 & Supp. 2015); 38 C.F.R. §§ 4.124a, DC 8520 (2016).

5. The criteria for a 20 percent rating, but no more, for radiculopathy in each lower extremity for the period from May 25, 2012 to August 24, 2015, have been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107(b) (West 2014 & Supp. 2015); 38 C.F.R. §§ 4.124a, DC 8520 (2016).

6. The criteria for a rating in excess of 20 percent for radiculopathy in each lower extremity for the period since from August 25, 2015, have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107(b) (West 2014 & Supp. 2015); 38 C.F.R. §§ 4.124a, DC 8520 (2016).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veteran's Claims Assistance Act

VA has a duty to notify and assist claimants in substantiating claims for VA benefits. See, e.g., 38 U.S.C.A. §§ 5103, 5103A (West 2014) and 38 C.F.R. § 3.159 (2016). In the instant case, VA provided adequate notice in letters sent to the Veteran. 

VA also has a duty to assist a claimant in the development of a claim. This duty includes assisting the claimant in the procurement of relevant treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159 (2016). The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). Service treatment records, VA treatment records, and VA examinations are associated with the claims file. 

The Board notes that this appeal was remanded in April 2015 in order to obtain a new VA examination. In September 2015, VA provided the Veteran with a relevant and adequate examination of his lumbar spine condition. The examiner reviewed the accurate history, considered lay statements, and provided clinical findings and diagnoses. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). 

The Board recognizes that the examiners did not measure the Veteran's back range of motion while weight-bearing. Correia v. McDonald, 28 Vet. App. 158, 168 (2016). However, this is of no prejudice to the Veteran, as the only way to warrant a rating in excess of the one currently assigned is to demonstrate ankylosis or incapacitating episodes. As such, the factors addressed Correia are no longer pertinent in addressing the merits of this claim. 

Therefore, VA has met its duty to assist in this respect. Thus, the Board is now satisfied there has been substantial compliance with this Remand. See Stegall v. West, 11 Vet. App. 268 (1998); Dyment v. West, 13 Vet. App. 141, 146-47 (1999).

There is no indication of additional existing evidence that is necessary for a fair adjudication of the claims that are the subject of this appeal. Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist. 

Lumbar Spine

The Veteran filed a claim for an increased rating of his lumbar spine disability on July 14, 2010. In a June 2011 statement, the Veteran asserted that his service-connected lumbar spine disability was much more severe than what was shown previously. Specifically, he contends that he was pushed beyond his pain threshold and that repetitive testing caused increased pain, restriction of motion, fatigue, and weakness. 

Disability evaluations are determined by the application of a schedule of ratings which is based on average impairment of earning capacity. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. See 38 C.F.R. § 4.1 (2016). Separate diagnostic codes identify the various disabilities. While the Board typically considers only those factors contained wholly in the rating criteria, it is appropriate to consider factors outside the specific rating criteria when appropriate in order to best determine the level of occupational and social impairment. See Mauerhan v. Principi, 16 Vet. App. 436 (2002); Massey v. Brown, 7 Vet. App. 204, 208 (1994). 

Where there is a question as to which of two separate evaluations shall be applied, the higher evaluation will be assigned if the disability more closely approximates the criteria required for that particular rating. 38 C.F.R. § 4.7 (2016). When a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in favor of the Veteran. 38 C.F.R. § 4.3 (2016).

Where evidence indicates that the degree of disability increased or decreased during appeal period following the assignment of the initial rating, "staged" ratings may be assigned for separate periods of time based on facts found. See Fenderson v. West, 12 Vet. App. 119, 126 (1999). The analysis in the following decision is therefore undertaken with consideration of the possibility that different ratings may be warranted for different time periods.

For the period prior to August 24, 2015, the Veteran received a 10 percent rating for his lumbar spine disability under 38 C.F.R. § 4.71a, DC 5237 (addressing lumbosacral and cervical strain). This diagnostic code applies a general rating formula that is applicable for most spine disabilities. Under this rating formula, the next-higher 20 percent evaluation is warranted when the evidence shows:
* Forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; 
* Combined range of motion of the thoracolumbar spine not greater than 120 degrees; 
* Muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis or abnormal kyphosis; or 
* Incapacitating episodes having a total duration of at least two weeks, but less than four weeks, during the past 12 months. 

By comparison, a 40 percent rating is warranted when the evidence shows:
* Forward flexion of the thoracolumbar spine to 30 degrees or less; 
* Favorable ankylosis of the entire thoracolumbar spine; or 
* Intervertebral disc syndrome with incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months. 
38 C.F.R. § 4.71a, DCs 5237, 5243 (2016).

The term "combined range of motion" refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion of the thoracolumbar spine is 240 degrees. 38 C.F.R. § 4.71a, Note 2, prior to DC 5235 (2016). Additionally, an "incapacitating episode" is "a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician." 38 C.F.R. § 4.71a, DCs 5237, 5243, Note 1 (2016).

As an initial matter, the Board finds that the Veteran is not entitled to a rating in excess of 10 percent for his lumbar spine disability for the period prior to May 25, 2012. Specifically, the Veteran underwent a VA examination in November 2010. During the examination, he reported that he suffered from severe flare-ups every 2 to 3 weeks for "hours." He stated that the extent of the additional limitation of motion or other functional impairment during flare-ups was "pain." He also reported fatigue, decreased motion, stiffness, weakness, and spine pain. He was able to walk more than 1/4 mile, but less than 1 mile. 

Upon examination, the Veteran did not exhibit an abnormal gait or abnormal spinal contour. The examiner observed no abnormal posture such as kyphosis, lordosis, scoliosis, or ankylosis. Additionally, the Veteran's forward flexion and combined range of motion reflected measurements that were well in excess of what is necessary for a 20 percent rating. Range of motion testing reflected 80 degrees of forward flexion and a total range of motion of 216 degrees. Although the examiner noted that there was objective evidence of pain following repetitive motion, there was no additional limitation in the range of motion after three repetitions. Finally, the examiner noted that there were no incapacitating episodes of spine disease. Therefore, the evidence demonstrates that the Veteran did not meet any of the criteria necessary for a 20 percent rating during this time period. 

However, the Veteran underwent a VA examination in May 2012 and, on the basis of the results from this examination, the Board determines that a 40 percent rating is warranted for the Veteran's lumbar spine disorder from this date. During the examination, he reported that he suffered from flare-ups of severe back pain that occur 3 to 4 days per month. The flare-ups were so severe that he was unable to leave bed when they occur. 

The Board also assigns significant probative value to the Veteran's statements in September 2012 and January 2013, detailing that the May 2012 VA examination did not reflect the worsening that he said he experienced. In a September 2012 statement, the Veteran stated that the examiner pushed him beyond his range of motion. He was forced to bend his pain threshold and asserted that he reported pain and weaker movement during the examination; however, it was not dictated in his records. Furthermore, in a January 2013 statement, he reported that he was in so much pain after the previous examination that he was unable to return to a standing position without supporting himself. He said that his back was much worse than currently reflected and that it had worsened since the previous examination. The failure of the May 2012 VA examiner to adequately assess the Veteran's condition leads the Board to assign that examination lower probative value. 

Based on the Veteran's statements detailing the worsening and the May 2012 examination showing an objective decline in the Veteran's lumbar spine disability, the Board is utilizing the date of that examination as the start of the period in which the Veteran exhibited symptoms appropriate for a 40 percent rating. Therefore, a 40 percent rating is warranted for the period since May 25, 2012. 

Next, the Board has considered whether a rating in excess of 40 percent is warranted at any point since May 25, 2012, but finds that an increased rating is not warranted. Specifically, at the May 2012 VA examination, the Veteran's range of motion was clearly inhibited. However, as with previous VA examinations, ankylosis was not shown, and he did not exhibit an abnormal posture nor did he have incapacitating episodes. Similarly, at a VA examination in August 2015, the Veteran did not have an abnormal posture nor did he have incapacitating episodes. While he did exhibit notable loss in range of motion, ankylosis was not shown. Therefore, as neither ankylosis nor incapacitating episodes has been shown, a rating in excess of 40 percent is not warranted. 

When considering these ratings, the Board has considered the impact of functional loss due to flare-ups of pain, fatigability, incoordination, pain on movement, and weakness. 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202, 206-7 (1995). In this case, while the Veteran complains of pain in his back, the additional functional loss caused by the pain is taken into account for his range of motion measurements. See Mitchell v. Shinseki, 25 Vet. App. 32, 37-43 (2011) (pain must affect some aspect of the normal working movements of the body such as strength, speed, coordination or endurance). Put another way, while the Veteran has complained of pain, these complaints are adequately contemplated in the ratings he currently receives.

Neurological Abnormalities

When evaluating the extent of the Veteran's spine disabilities, the Board is required to consider whether a separate evaluation is warranted for any associated neurological abnormality including, but not limited to, bowel or bladder impairment, neurological impairment in the extremities or other such disorders, which are to be evaluated under the appropriate diagnostic code. See 38 C.F.R. § 4.71(a).

In this regard, the Veteran is in receipt of a 10 percent disability rating prior to August 24, 2015, and a 20 percent disability rating since that date for neurological symptoms in each of the lower extremities under 38 C.F.R. § 4.71a, DC 8520 (2016), which addresses paralysis of the sciatic nerve. The Board agrees that this is the most appropriate diagnostic code. Under this diagnostic code, a 20 percent rating is warranted when the condition is "moderate" in nature and a 40 percent rating is warranted when the condition is "moderately severe" in nature. Id.

As an initial matter, the Board finds that the Veteran is not entitled to a rating in excess of 10 percent for radiculopathy in either lower extremity radiculopathy prior to May 25, 2012. Specifically, during his November 2010 VA examination, he reported that he suffered from radiating pain in both legs that resulted in numbness. However, his reflexes were normal (2+), his sensory examination was normal to pinprick and light touch, and his motor strength was normal. Therefore, the Board finds that a 10 percent rating correctly reflects his mild symptoms during this period of time. 

Next, based on the results from a VA examination in May 2012, the Board finds that the Veteran is entitled to a rating of 20 percent for each lower extremity radiculopathy from the date of this examination. Specifically, on that occasion, the examiner opined that the severity of the Veteran's radiculopathy was moderate after noting intermittent pain, paresthesias and/or dysesthesias, and numbness. Furthermore, during a November 2012 peripheral nerves examination, the examiner opined that there was incomplete paralysis of a mild nature. Therefore a 20 percent rating is warranted for neuropathy in each lower extremity since May 25, 2012.

However, a rating in excess of 20 percent is not warranted for the period since May 25, 2012. Specifically, at the VA examination in May 2012, while mild incomplete paralysis was shown, it could not be described as "mildly severe." Of note, his muscle strength testing was normal, and no atrophy was present. Reflexes and sensory functioning were also normal. In a VA examination in October 2012, he complained of pain in the right lower extremity that was moderate in the right lower extremity and mild in the left lower extremity. Again, however, muscle strength testing was normal, as were reflexes and sensory functioning. 

Finally, at a VA examination in August 2015, the examiner opined that the Veteran's radiculopathy was of a moderate nature. Upon examination, muscle strength testing was normal, and no atrophy was present. Reflexes were normal (2+) and, while there was some diminished sensory functioning in the toes, this does not amount to "moderately severe" incomplete paralysis. Therefore, as symptoms of a moderately severe nature were not shown, the Board finds that a rating in excess of 20 percent rating is not warranted for either lower extremity since May 25, 2012. 

In considering the appropriate disability ratings, the Board has also considered the Veteran's statements that his disabilities are worse than the ratings he currently receives. In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990).

Competency of evidence differs from weight and credibility. While the Veteran is competent to report symptoms because this requires only personal knowledge as it comes to him through his senses, he is not competent to identify a specific level of disability of his lumbar spine disability according to the appropriate diagnostic codes. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify"). 

On the other hand, such competent evidence concerning the nature and extent of the Veteran's lumbar spine disability has been provided by the medical personnel who have examined him during the current appeal and who have rendered pertinent opinions in conjunction with the evaluations. The medical findings (as provided in the examination reports) directly address the criteria under which these disabilities are evaluated.

The Board also finds that consideration for an extraschedular evaluation, a component of a claim for an increased rating, is not warranted. Bagwell v. Brown, 9 Vet. App. 337, 339 (1996). Although the Board may not assign an extraschedular rating in the first instance, it must specifically adjudicate whether to refer a case for extraschedular evaluation when the issue either is raised by the claimant or is reasonably raised by the evidence of record. Barringer v. Peake, 22 Vet. App. 242 (2008).

In considering whether an extraschedular rating may be warranted, VA must first determine whether the available applicable schedular rating criteria are inadequate because they do not contemplate the Veteran's level of disability and symptomatology. If the rating criteria are inadequate, VA must then determine whether the Veteran exhibits an exceptional disability picture indicated by other related factors such as marked interference with employment or frequent periods of hospitalization. If such related factors are exhibited, then referral must be made to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for extraschedular consideration. See Thun v. Peake, 22 Vet. App. 111 (2008). 

In this case, the evidence does not indicate that Veteran's disability picture could not be adequately contemplated by the applicable schedular rating criteria discussed above. Specifically, the Board has reviewed all of his relevant symptoms related to the issue on appeal, and concludes that there are no symptoms that were not able to be addressed by the applicable diagnostic codes. See Mittleider v. West, 11 Vet. App. 181 (1998). In making this conclusion, the Board notes the Veteran's contention that VA has not sufficiently considered the severity of his lumbar spine disability. However, the effects of his disabilities have been fully addressed in the schedular rating criteria. Moreover, in view of the Board's responsibility to consider functional loss when assigning the appropriate rating for musculoskeletal disorders, the applicable diagnostic codes are already interpreted so broadly such that it is virtually impossible that any potential symptom would not be contemplated. See DeLuca, 8 Vet. App. at 202. 

Given that the applicable schedular rating criteria are more than adequate in this case, the Board need not consider whether the Veteran's disability picture includes exceptional factors, and referral for consideration of the assignment of a disability evaluation on an extraschedular basis is not warranted. See Thun, 22 Vet. App. at 111; see also Bagwell v. Brown, 9 Vet. App. 337, 338-9 (1996); Floyd v. Brown, 9 Vet. App. 88, 96 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).

Finally, although the Veteran has submitted evidence of a medical disability, and made a claim for the highest rating possible, he has not submitted evidence of unemployability due specifically to his service-connected disabilities. 

The Veteran did not respond to a January 2014 letter from VA that provided him a TDIU application. The information requested in these forms is crucial for the Board to make an informed decision as to the Veteran's ability to obtain or maintain substantially gainful employment. Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). 

The Board acknowledges that a November 2010 examiner stated that the Veteran sometimes misses work due to back pain. Also, the May 2012 examiner noted that he could not perform sedentary or physically active work, and has closed his auto towing business. The August 2015 examiner noted that the Veteran would have difficulty with extended sitting and standing. However, the examiner also noted that the Veteran reported that he lost approximately one month of employment that year as a self-employed truck driver. 

As the Veteran did not provide sufficient evidence to support a claim for entitlement to a TDIU, and was employed at the time of his last VA examination, the question of entitlement to a total disability rating based on individual unemployability due to service-connected disabilities has not been raised. See Rice v. Shinseki, 22 Vet. App. 447 (2009); Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001).


ORDER

A rating in excess of 10 percent for a lumbar spine disability for the period prior to May 25, 2012, is denied. 

A 40 percent rating, but no more, for a lumbar spine disability for the period from May 25, 2012 to August 24, 2015, is granted, subject to the laws and regulations governing the payment of monetary benefits. 

A rating in excess of 40 percent for a lumbar spine disability for the period since August 24, 2015, is denied. 

A rating in excess of 10 percent for radiculopathy in each lower extremity prior to May 25, 2012, is denied. 


A 20 percent rating, but no more, for radiculopathy in each lower extremity for the period from May 25, 2012 to August 24, 2015, is granted, subject to the laws and regulations governing the payment of monetary benefits. 
 
A rating in excess of 20 percent for radiculopathy in each lower extremity for the period since from August 25, 2015, is denied. 




____________________________________________
B.T. KNOPE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs